UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARIO VALENZUELA,                          CASE NO. CV F 13-1620 LJO JLT

              Plaintiff,          **ORDER TO DISMISS DEFENDANTS
                                           WELLS FARGO AND NORTHWEST
                                           TRUSTEE SERVICES AND JUDGMENT
                                           THEREON**
                                           (Docs. 18, 25.)

    vs.


WELLS FARGO BANK
NATIONAL ASSOCIATION, et al.,

              Defendants.

_____/

## **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters.  This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff.  The parties and counsel are encouraged to contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.

## **INTRODUCTION**

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Northwest Trustee Services, Inc. ("Northwest") seek to dismiss as meritless and legally barred plaintiff Mario Valenzuela's

1

("Mr. Valenzuela's") wrongful foreclosure and related claims arising from his loan default and initiation of foreclosure on Mr. Valenzuela's Bakersfield property ("property").  This Court considered Wells Fargo's and Northwest's F.R.Civ.P. 12(b)(6) motions to dismiss on the record without a hearing, pursuant to Local Rule 230(c), (g), and in the absence of Mr. Valenzuela's timely opposition or amended complaint as a matter of course.  This Court construes Mr. Valenzuela's action as an attempt to thwart, delay and complicate property foreclosure and, for further reasons discussed below, DISMISSES this action against Wells Fargo and Northwest.

## BACKGROUND

### Mr. Valenzuela's Loan And Its Assignment

Mr. Valenzuela executed a deed of trust ("DOT") to secure the property for a $94,299 note ("note") payable to Accubanc Mortgage Corporation ("Accubanc").  The DOT was recorded on December 24, 1997[1] and named Mr. Valenzuela as borrower and trustor and Accubanc as lender, trustee and beneficiary.  The DOT addresses its assignment:  "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower . . ."

By a corporation assignment of deed of trust recorded on July 8, 1999, Accubanc assigned the DOT and its underlying note to PNC Mortgage Corp. of America  ("PNC").  In 2001, PNC changed its name to Washington Mutual Home Loans, Inc. ("WMHLI"), which according to Mr. Valenzuela's operative complaint,[2] merged into defendant WMHLI Transfer Interim LP ("Transfer Interim LP").  The complaint notes that in 2002, Transfer Interim LP filed with the Ohio Secretary of State a Certificate of Cancellation/Cancellation Amendment Withdrawal of Limited Partnership or Partnership Having Limited Liability based on "Partnership ceasing to have a least two partners."

### Mr. Valenzuela's Initial Default And Loan Assignment To Wells Fargo

By the end of 2004, Mr. Valenzuela had failed to make loan payments to result in the

---

[1]  Documents pertaining to Mr. Valenzuela's loan and property foreclosure were recorded with the Kern County Official Records.

[2]  Mr. Valenzuela proceeds on his Verified Complaint for Declaratory Judgment, Temporary Restraining Order, Injunctive Relief, and Monetary Damages ("complaint").

December 22, 2004 recording of a notice of default and election to sell under deed of trust.  A notice of trustee's sale was recorded to set a June 8, 2005 property sale.  To avoid the trustee's sale, Mr. Valenzuela and Washington Mutual Bank, F.A. ("Washington Mutual"), as lender, entered into a June 1, 2005 Loan Modification Agreement to adjust Mr. Valenzuela's loan terms.  Wells Fargo characterizes Washington Mutual as WMHLI's successor.  On January 26, 2007, a Corporate Assignment of Deed of Trust ("Wells Fargo assignment") was recorded to assign to Wells Fargo the interest under the DOT of Washington Mutual Bank f/k/a Washington Mutual Bank, FA, successor by merger to Washington Mutual Home Loans, Inc., f/k/a PNC Mortgage Corp. of America.

By a corporate assignment of deed of trust recorded on October 27, 2011, Wells Fargo assigned its interest under the DOT to EMC Mortgage LLC ("EMC").  Wells Fargo thereafter serviced Mr. Valenzuela's loan for EMC.

### Mr. Valenzuela's Further Default

After Mr. Valenzuela again failed to make loan payments, a notice of default and election to sell under deed of trust was recorded on March 26, 2012.  On June 27, 2012, a substitution of trustee was recorded to substitute Northwest as DOT trustee.  On September 16, 2013, Northwest recorded a notice of trustee's sale to set an October 9, 2013 trustee's sale.

On October 8, 2013, Mr. Valenzuela filed the complaint, and the trustee's sale apparently did not proceed.

### Mr. Valenzuela's Claims

The gist of the complaint is that neither Wells Fargo, Northwest nor Transfer Interim LP "can establish an independent ownership interest in the Note and Deed of Trust against the Property" to authorize property foreclosure.  In particular, the complaint alleges:

> All of Defendants' actions are predicated on a void assignment of the Note and Deed of Trust against the Property to Defendant Wells Fargo . . . from Washington Mutual Bank . . . because Washington Mutual Bank never acquired the Note and Deed of Trust against the Property as the only assignee's successor and last known beneficiary of the Note and Deed of Trust was Defendant Interim LP . . . .  Defendant Interim LP cancelled its limited partnership without making any further assignment or designating any other party to wind up its assets . . . .  Therefore, it is unknown what entity or party, if any, actually has any beneficial rights and there is no record that any

entity or party has a secured right under any deed of trust against the Property.

The complaint, among other things, challenges property foreclosure, seeks to quiet title in Mr. Valenzuela's favor, and alleges California and federal statutory claims which are addressed below.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

4

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

Lastly, under F.R.Evid. 201, a court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

---

[3]     "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

With these standards in mind, this Court turns to Wells Fargo's and Northwest's challenges to the complaint's claims against them.

**Failure To Tender Indebtedness**

Wells Fargo agrees that the complaint's claims to prevent foreclosure and to quiet title in Mr. Valenzuela's favor are barred by his failure "to tender the amount of secured indebtedness."

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.*, 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.*, 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations

7

omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimponese v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,  92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law

8

contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Neither the complaint nor record references Mr. Valenzuela's credible, legitimate tender of indebtedness or meaningful ability to do so. Mr. Valenzuela's failure to indicate a credible, legitimate tender of or ability to tender amounts outstanding is construed as his concession of inability to do so. Without Mr. Valenzuela's credible, legitimate tender, he seeks empty remedies, not capable of being granted. Mr. Valenzuela points to nothing to avoid tender requirements, and failure to require a tender of his indebtedness would provide him an unjustified windfall. In the absence of Mr. Valenzuela's credible, legitimate tender, his purported claims are doomed.

### Cancellation Of Instruments And Quiet Title

The complaint's (first) cancellation of instruments and (second) quiet title claims challenge authority to foreclose on the property and seek to invalidate the foreclosure documents and to quiet the property's title in Mr. Valenzuela's favor.

Wells Fargo challenges the cancellation of instruments and quiet title claims as seeking relief beyond the comprehensive statutory framework for nonjudicial foreclosure.

#### *Comprehensive Statutory Framework*

Under California law, a lender may pursue nonjudicial foreclosure upon default with a

deed of trust with a power of sale clause. "Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may nonjudicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

### Authority To Foreclose

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

Lack of authorization to initiate foreclosure does not support a wrongful foreclosure claim. In *Gomes v. Countrywide Home Loans, Inc.,* 192 Cal.App.4th 1149, 1154, 121

Cal.Rptr.3d 819 (2011), the California Court of Appeal explained:

> By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes [plaintiff] is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated.

California Civil Code section 2924(a) does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action." *Gomes,* 192 Cal.App.4th at 1155, 121 Cal.Rptr.3d 819. "The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." *Gomes,* 192 Cal.App.4th at 1155, 121 Cal.Rptr.3d 819.

This action is invalid preemptive suit to delay nonjudicial foreclosure of the property. In *Siliga v. Mortgage Electronic Registration Systems, Inc.,* 219 Cal.App.4th 75, 82-83, 161 Cal.Rptr.3d 500 (2013), the California Court of Appeal explained the prohibition to such suits:

> California courts have refused to allow trustors to delay the nonjudicial foreclosure process by pursuing preemptive judicial actions challenging the authority of a foreclosing "beneficiary" or beneficiary's "agent." (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511, 156 Cal.Rptr.3d 912 (*Jenkins*); *Gomes, supra*, 192 Cal.App.4th at pp. 1154–1156 & fn. 5, 121 Cal.Rptr.3d 819.) Such an action is "preemptive" if the plaintiff alleges no "specific factual x" for the claim that the foreclosure was not initiated by the correct person. (*Jenkins, supra,* at p. 512, 156 Cal.Rptr.3d 912.) A preemptive suit does not seek a remedy for specified misconduct in the nonjudicial foreclosure process, which may provide a basis for a valid cause of action. Instead, a preemptive suit seeks to create an additional requirement for the foreclosing party, apart from the comprehensive statutory requirements, by requiring the foreclosing party to demonstrate in court that it is authorized to initiate a foreclosure. (*Ibid.*) "[A]llowing a trustor-debtor to pursue such an action, absent a ' specific factual basis for alleging that the foreclosure was not initiated by the correct party' would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' created by the Legislature, and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]' " (*Id.* at p. 512, 156 Cal.Rptr.3d 912; italics in original.)

*Presumption Of Propriety*

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777. "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003). "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted). "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)). "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).

*Prejudice*

Moreover, the California Court of Appeal has explained that prejudice is required for a wrongful or unauthorized foreclosure claim:

> We also note a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. . . . If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011); *see Knapp v. Doherty*, 123 Cal.App.4th 76, 86, n. 4, 20 Cal.Rptr.3d 1 (2004) ("A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure and the resulting prejudice.'"); *Angell v. Superior Court,* 73 Cal.App.4th 691, 700, 86 Cal.Rptr.2d 657 (1999) (failure to comply with procedural requirements must cause prejudice to plaintiff).

Prejudice is not presumed from "mere irregularities" in the process. *Meux v. Trezevant*, 132 Cal. 487, 490, 64 P. 848 (1901).

A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

The complaint lacks meaningful facts of a specific statutory irregularity or misconduct in foreclosure proceedings attributable specifically to Wells Fargo or Northwest.  Mr. Valenzuela's unsupported conclusory claims of absence of authority to foreclose offer nothing to substantiate a discrepancy in the foreclosure process.  Nothing in the record indicates that Wells Fargo or Northwest engaged in conduct to cause Mr. Valenzuela prejudice to preclude foreclosure.  There are no facts that Mr. Valenzuela was current on his loan payments or could have become current had Wells Fargo or Northwest not committed wrongdoing.  The complaint fails to allege Mr. Valenzuela was not credited for made payments or attempted payments or that more than one entity attempted to foreclose on the property concurrently.  The complaint lacks allegations to overcome the presumption of foreclosure validity.  As such, the complaint's claims based on unlawful or unauthorized foreclosure are barred.

### Wrongful Foreclosure

The complaint's third through fifth claims assert wrongful foreclosure based on alleged violations of California's Homeowner Bill of Rights ("HBR"), Cal. Civ. Code, §§ 2923, et al.

/ / /

*Elements*

The "elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.,* 202 Cal.App.4th 89, 104, 134 Cal.Rptr.3d 622 (2011).

*No Retroactive Application*

Wells Fargo challenges the HBR-based claims in that the supporting statutes do not operate retroactively.

California Civil Code section 3 states that no part of the Civil Code "is retroactive, unless expressly so declared." California Code of Civil Procedure section 3 is similar to bar retroactive application of the Code of Civil Procedure. "Section 3 of the Civil Code embodies the common law presumption against retroactivity." *In re Marriage of Bouquet,* 16 Cal.3d 583, 587, n. 3, 128 Cal.Rptr. 427 (1976).

"[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective. . . ." *Landgraf v. USI Film Products,* 511 U.S. 244, 269, 114 S.Ct. 1483 (1994) (internal quotation and citation omitted). "In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions. [¶] It is therefore not surprising that the antiretroactivity principle finds expression in several provisions of our Constitution." *Landgraf,* 511 U.S. at 265-266, 114 S.Ct. 1483.

Wells Fargo notes that the HBR "imposes new duties and obligations on the lender with respect to its legal and contractual remedy of nonjudicial foreclosure." Wells Fargo identifies consummation of Mr. Valenzuela's loan as the time to determine application of the HBR. Wells Fargo points out that Mr. Valenzuela's loan originated in 1997 and was consummated no

14

later than the July 1, 2005 loan modification.  Wells Fargo concludes that the HBR cannot apply to Mr. Valenzuela's loan given that the HBR did not become effective until January 1, 2013, years after consummation of Mr. Valenzuela's loan, and given the absence of legislative intent to apply the HBR retroactively to warrant dismissal of the complaint's third through fifth wrongful foreclosure claims.

Wells Fargo is correct that the complaint's HBR claims are not subject to retroactive operation and are thus barred.

### California Commercial Code Section 3301

The complaint's (third) wrongful foreclosure claim appears to be premised in part on alleged violation of California Commercial Code section 3301 ("section 3301"), which addresses persons entitled to enforce a negotiable instrument.  Defendants correctly argue that section 3301 does not apply to nonjudicial foreclosure.  *See Debrunner v. Deutsche Bank Nat. Trust Co.,* 204 Cal.App.4th 433, 440, 138 Cal.Rptr.3d 830 (2012) ("Plaintiff's reliance on the Commercial Code provisions pertaining to negotiable instruments is misplaced.  The comprehensive statutory framework established [in sections 2924, et seq.] to govern nonjudicial foreclosure sales is intended to be exhaustive").

Nothing supports a section 3301 claim.

### California Civil Code Section 2924(a)(6)

The complaint's (third) wrongful foreclosure claim appears to be based in part on alleged violation of California Civil Code section 2924(a)(6) ("section 2924(a)(6)"), which requires a holder of a beneficial interest under a deed of trust, its agents, or an original or substituted deed of trust trustee to initiate foreclosure.  Wells Fargo notes that the foreclosing entity is not required to possess the original note or to record assignments of the deed of trust.

"Under California law, there is no requirement for the production of an original promissory note prior to initiation of a nonjudicial foreclosure. . . . Therefore, the absence of an original promissory note in a nonjudicial foreclosure does not render a foreclosure invalid." *Pantoja v. Countrywide Home Loans, Inc.,* 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009). "Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has

1  the right to initiate the foreclosure process. Production of the original note is not required to

2  proceed with a non-judicial foreclosure." *Hafiz*, 652 F.Supp.2d at 1043 (citation omitted).

3      "Under Civil Code section 2924, no party needs to physically possess the promissory

4  note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ.

5  Code, § 2924(a)(1)).  Rather, "[t]he foreclosure process is commenced by the recording of a

6  notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30

7  Cal.Rptr.2d 777.  "The trustee has the power and the duty to initiate foreclosure proceedings on

8  the property upon the trustor's default, resulting in a sale of the property."  *Hafiz*, 652

9  F.Supp.2d at 1043 (citation omitted).  An "allegation that the trustee did not have the original

10  note or had not received it is insufficient to render the foreclosure proceeding invalid."  *Neal v.*

11  *Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

12      Moreover, an assignment of an interest under a deed of trust need not be recorded as a

13  precondition to foreclose under a deed of trust.  "It has been established since 1908 that this

14  statutory requirement that an assignment of the beneficial interest in a debt secured by real

15  property must be recorded in order for the assignee to exercise the power of sale applies only to

16  a mortgage and not to a deed of trust." *Calvo v. HSBC Bank USA, N.A.,* 199 Cal.App.4th 118,

17  122, 130 Cal.Rptr.3d 815 (2011) (citing *Stockwell v. Barnum*, 7 Cal.App. 413, 94 P. 400

18  (1908)).

19      Wells Fargo notes that Northwest, the current DOT trustee, issued the operative notices

20  of default and trustee's sale.  Wells Fargo concludes that since Northwest as DOT trustee

21  conducts the foreclosure, section 2924(a)(6) does not support a claim against Wells Fargo.

22      Wells Fargo is correct and is not subject to a section 2924(a)(6) claim.

23  ## California Civil Code Section 2923.55

24      The complaint's (fourth) wrongful foreclosure claim appears to be based on an alleged

25  violation of California Civil Code section 2923.55(b)(1)(B) ("section 2923.55(b)(1)(B)"),

26  which requires a mortgage servicer to provide notice that a borrower may request copies of the

27  promissory note, deed of trust, and deed of trust assignment.  The claim concludes that in the

28  absence of such notice, "no Defendant has demonstrated the right of the mortgage servicer to

16

foreclose."

As noted above, the nonjudicial foreclosure statutes do not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action." *Gomes,* 192 Cal.App.4th at 1155, 121 Cal.Rptr.3d 819. "The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." *Gomes,* 192 Cal.App.4th at 1155, 121 Cal.Rptr.3d 819. Moreover, given Mr. Valenzuela's default, no prejudice arises from alleged failure to provide the section 2923.55(b)(1)(B) notice. There are no allegations that Mr. Valenzuela would have avoided default had he received the section 2923.55(b)(1)(B) notice.

A purported section 2923.55(b)(1)(B) claim fails.

### California Civil Code Section 2923.6

The complaint's (fifth) wrongful foreclosure claim appears to be premised on alleged violation of subparts (e) and (f) of California Civil Code section 2923.6 ("section 2923.6"), which requires delay to foreclose after denial of loan modification and notice of reasons for denial of loan modification. The claim alleges Mr. Valenzuela was provided no notice of his "right to appeal, or the basis of any denial."

Wells Fargo challenges the complaint's lack of allegations that during initiation of property foreclosure, Mr. Valenzuela's loan was subject to modification review and that his denial notice was deficient.

The complaint lacks facts to support a claim based on section 2923.6. There are no facts that Mr. Valenzuela's loan was subject to loan modification review after the initiation of property foreclosure. The complaint merely references that Mr. Valenzuela "reached out" to Wells Fargo for loan assistance and points only to Mr. Valenzuela's telephone contacts to seek assistance.

/ / /

/ / /

17

### **RICO**[4]

The complaint's (sixth) RICO claim accuses defendants of "racketeering activity," including mailing "mortgage statements to collect monies on loans not belonging to them," misrepresenting that "they own the loans," and engaging in the property foreclosure "while not being the owner of the loan or having the authority to foreclose."

The complaint lacks facts to support RICO elements.

### *Elements*

RICO, more particularly, subsection (c) of 18 U.S.C. § 1962 ("section 1962") provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985). A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

### *Enterprise*

"[I]t is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated." *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1251 (7th Cir.1989). Section 1962(c) requires "that the person named as the defendant cannot also be the entity identified as the enterprise." *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir. 1989). For a RICO claim, an alleged "enterprise" requires an independent legal entity such as a corporation or an "association in fact" of individuals. 18 U.S.C. § 1961(4). The U.S. Supreme Court has explained:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the

---

[4]        RICO refers to the Racketeer and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961, et seq.

statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

*United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).

An "association-in-fact enterprise" requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946, 129 S.Ct. 2237 (2009). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524. Moreover, an "'enterprise' must have some longevity, since the offense proscribed by [section 1962(c)] demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'" *Boyle*, 556 U.S. at 946, 129 S.Ct. 2237. An "association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948, 129 S.Ct. 2237.

"[T]o avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

The complaint lacks facts to identify an enterprise under RICO. No facts support that Wells Fargo was associated in an enterprise activity with others. There are no facts that an alleged association-in-fact was an ongoing organization whose members functioned as a continuing unit. The complaint fails to allege facts to show an alleged enterprise's purpose, the relationship of those associated with an enterprise or continuity of an ongoing activity to establish an enterprise. "Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." *Reves v. Ernst & Young*, 507 U.S. 170, 184, 113 S.Ct. 1163 (1993).

*Pattern Of Racketeering Activity*

"Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code. *Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9th Cir. 1990); *see* 18 U.S.C. § 1961. "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to require "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." Section 1961"does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J., Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989). Section 1961(5) "says of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed." *H.J., Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.

"Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900 (italics in original). The term pattern requires a relationship between predicates and the threat of continuing activity. *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900. The factor of continuity plus relationship combines to produce a pattern. *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. 2900.

A pattern is not formed by "sporadic activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at

20

2900.   A RICO violation requires "continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *H. J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.   RICO addresses "long-term criminal conduct." *H. J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.

The complaint lacks facts to establish an enterprise's conduct of a pattern of racketeering activities, especially given the absence of a factual basis for state or federal crimes to constitute the necessary predicate acts within the definition of racketeering activity.   There are no allegations that Wells Fargo or others engaged in an enterprise or two or more criminal acts to support a pattern of racketeering activity under sections 1961(5) and 1962.   Nothing suggests a continuing threat of long-term racketeering activity to establish a pattern, especially given the absence of specific dates.   The complaint's mere suggest of mail or wire fraud is unavailing.

### Damages

The complaint further fails to satisfy the damages requirement for a RICO claim.   The "plain language" of pertinent RICO provisions "leads us to conclude that a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income."   *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d 429, 437 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336 (1993).

A purported RICO claim is vitiated by the absence of sufficient facts of an enterprise, pattern of racketeering activity, unlawful debt and recoverable damages.   The complaint alleges no injury to Mr. Valenzuela's business or property by a racketeering activity or a sufficiently alleged violation identified under RICO.   The complaint is devoid of facts to satisfy sections 1961 and 1962.   The RICO claim is subject to dismissal.

### Pleading Specificity

The RICO claim is further subject to dismissal given the complaint's failure to satisfy F.R.Civ.P. 9(b) pleading requirements with the complaint's absence of facts to support RICO elements.

The Ninth Circuit applies F.R.Civ.P. 9(b) particularity requirements to RICO claims under section 1962. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989);

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93   (9th Cir. 1988) ("The allegations of predicate acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b), which requires that circumstances constituting fraud be stated with particularity."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.")

"The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  A RICO complaint must be presented with intelligibility sufficient "for a court or opposing party to understand whether a valid claim is alleged and if so what it is."  *Old Time Enter., Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir.1989).  A RICO claim "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990).

 "The particularity requirements of Rule 9(b) apply to allegations of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim."  *Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

As discussed above, the absence of facts to support RICO elements illustrates the complaint's failure to satisfy F.R.Civ.P. 9(b) to further warrant dismissal of the RICO claim.

### Debt Collections Practices

The complaint's seventh claim appears to attempt to allege violations under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code, §§ 1788, et seq. The debt collection practices claim alleges that "Defendants' actions constitute a violation of the Rosenthal Act in that they threatened to take actions or did take actions not permitted by law" and that "Defendants . . . had not right to foreclose on Plaintiff's home."

Wells Fargo challenges the debt collection practices claim as legally barred in that non-judicial foreclosure does not qualify as debt collection under the FDCPA and RFDCPA.

### The FDCPA

The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds*, 761 F.2d 237 (5th Cir. 1985). The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt collector" does not include a person who collects or attempts to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. 1962a(6)(F).

"The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry*, 756 F.2d at 1208; *see F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 172 (3rd Cir. 2007) ("an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of assignment").

The complaint fails to substantiate Wells Fargo's status as a debt collector given allegations that Accubanc originated Mr. Valenzuela's loan and that Wells Fargo merely serviced the loan for EMC. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996); *Kloth v. Citibank (South Dakota), N.A.*, 33 F.Supp.2d 115, 1998 (D. Conn. 1998) ("Generally, the FDCPA does not apply to creditors."). The complaint lacks a valid FDCPA claim and facts that Wells Fargo engaged in conduct prohibited by the FDCPA, especially given that Wells Fargo does not qualify as a debt collector under the FDCPA.

Moreover, as a fellow district judge explained, "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA":

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

. . . Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

*Hulse v. Ocwen Federal Bank, FSB,* 195 F.Supp.2d 1188, 1204 (D. Or. 2002) (actions "in pursuit of the actual foreclosure may not be challenged as FDCPA violations").

The complaint's limited meaningful allegations address foreclosure, not debt collection activities subject to the FDCPA.  In the absence of facts of actionable debt collection, a claim based on the FDCPA is subject to dismissal.

### *The RFDCPA*

The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code, § 1788.1(b).  The RFDCPA "protects consumers from debt collection practices for 'consumer debts,' created through transactions in which 'property, services or money is acquired on credit . . . primarily for personal, family, or household purposes.'"  *Pittman v. Barclays Capital Real Estate, Inc.*, 2009 WL 1108889, at *3 (S.D. Cal. 2009) (quoting Cal. Civ. Code, § 1788.2(e)-(f)).

The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code, § 1788.2(c).   "[F]oreclosure does not constitute debt collection under the RFDCPA."  *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008).  The "law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDCA."  *Gamboa v. Trustee Corps*, 2009 WL 656285, * 4 (N.D. Cal. 2009).  As this Court has explained previously, "[l]ogic suggests that non-judicial foreclosure is not a debt collector's act under California Civil Code section 1788.2(c)."  *Swanson v. ECM Mortgage Corp.*, 2009 WL 3627925 (E.D. Cal. 2009).

The complaint fails to substantiate Wells Fargo as a debt collector to subject it to a RFDCPA claim.   The complaint attempts to stretch RFDCPA liability to a point not contemplated by the RFDCPA.  The complaint's failure to identify a specific RFDCPA

1   violation is a fatal flaw.  A purported RFDCPA claim fails and is subject to dismissal.

2                              **Unfair Business Practices**

3          The complaint's eighth claim appears to proceed under California's Unfair Competition

4   Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq., and alleges that "Defendants

5   committed unlawful, unfair, and/or fraudulent business practices . . . by engaging in the

6   unlawful, unfair, and fraudulent business practices alleged herein including violating the

7   aforementioned statutes and common law as set forth in the Counts to this Complaint."

8                                    *Standing*

9          Wells Fargo challenges Mr. Valenzuela's standing to pursue a UCL claim in the

10  absence of an injury cognizable under the UCL.

11

12         California Business and Professions Code section 17204 limits standing to bring a UCL

13  claim to specified public officials and a private person "who has suffered injury in fact and has

14  lost money or property as a result of the unfair competition."  "This provision requires

15  [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in

16  fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60

17  (9th Cir.2009), and also requires a 'causal connection' between [defendant's] alleged UCL

18  violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal.Rptr.3d 466,

19  471–72 (2008)."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th Cir. 2010), *cert.*

19  *denied*, 131 S.Ct. 1817 (2011).

20         Business and Professions Code section 17203 addresses UCL relief and provides in

21  pertinent part:

22                 Any person who engages, has engaged, or proposes to engage in unfair
                   competition may be enjoined in any court of competent jurisdiction. The court
23                 may make such orders or judgments . . . as may be necessary to restore to any
                   person in interest any money or property, real or personal, which may have been
24                 acquired by means of such unfair competition.  (Bold added.)

25         "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private

26  plaintiff's remedies are 'generally limited to injunctive relief and restitution.'"  *Kasky v. Nike,*

27  *Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc.*

28  *v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

                                          25

The complaint lacks facts of Mr. Valenzuela's money or property allegedly lost in that he was obligated to pay his loan and faced foreclosure if he failed to meet his obligations. As such, the complaint lacks facts to connect alleged damages to Wells Fargo. Foreclosure of the property fails to support a UCL claim in the absence of allegations of Mr. Valenzuela's performance to avoid default. The complaint lacks facts to support Mr. Valenzuela's standing to seek UCL relief to warrant dismissal of the UCL claim.

### Unlawful, Unfair Or Fraudulent Practice

Wells Fargo challenges the complaint's failure to allege facts to support UCL violations. Wells Fargo contends that the UCL claim is subject to dismissal given the complaint's failure to allege a predicate violation of law to support a UCL claim and to allege facts to support an unlawful, unfair or fraudulent business practice.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000). An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale*, 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins.*, 2 Cal.4th at 383, 6 Cal.Rptr.2d 487.

A fellow district court has explained the borrowing of a violation of law other than the UCL:

To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010).

Moreover, "a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct." *Rothschild v. Tyco Internat. (US), Inc.,* 83 Cal.App.4th 488, 494, 99 Cal.Rptr.2d 721 (2000).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone*, 20 Cal.4th 163,187, 83 Cal.Rptr.2d 548 (1999). A business practice is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal.Rptr.2d 89 (1996) (internal quotations and citations omitted). The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived," *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439 (2000); *Medical Instrument Development Laboratories v. Alcon Laboratories*,

27

2005 WL 1926673, at *5 (N.D. Cal. 2005).  A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question."  *Schnall*, 78 Cal.App.4th at 1167, 93 Cal.Rptr.2d 439.

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993); *see People v. McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811 (1979) ("Without supporting facts demonstrating the illegality of a rule or regulation, an allegation that it is in violation of a specific statute is purely conclusionary and insufficient to withstand demurrer").

The complaint lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite the complaint's references to overbroad, conclusory misconduct without specific facts to connect alleged wrongdoing to Wells Fargo.  As demonstrated throughout this order, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim.  The complaint lacks viable statutory or common law claims and lacks reasonable particularity of facts to support a UCL claim.  The complaint lacks particularity of fraudulent circumstances for a UCL claim, especially given failure of fraud-sounding claims. The complaint's UCL claim fails with its other claims and is subject to dismissal.

### Declaratory Relief

The complaint's (ninth) declaratory relief claim seeks "judicial determination":

1.    "[O]f the validity of the Defendant Wells Fargo's acquisition of the Note and Deed of Trust against the Property and related subsequently non-judicial foreclosure procedures"; and

2.     "[A]s to the validity of whether Defendant Wells Fargo is a real party in interest vis-à-vis as the mortgagee of the Property."

Wells Fargo challenges the declaratory relief claim in the absence of "a substantive basis for liability" and existence of a controversy subject to declaratory relief.  Wells Fargo notes there is no controversy as to Mr. Valenzuela's default, whether he was not credited for loan payments, or whether more than one entity attempts to foreclose on the property.  Wells Fargo argues that since declaratory relief is a remedy, the complaint is unable to allege declaratory relief as a claim.

28

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).   "A declaratory judgment is not a theory of recovery."  *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).  A declaratory relief claim operates "prospectively," not to redress past wrongs.  *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F.Supp.2d 1142, 1173 (E.D. Cal. 2009).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).  The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

29

A declarative relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).   As an equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred. *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).

The complaint seeks to redress past alleged wrongs in connection with authority to foreclose and original or modified loan terms.  The complaint fails to allege facts to support an actual controversy and in turn fails to support declaratory relief subject to the DJA.  Purported declaratory relief fails given dismissal of other claims.  The complaint fails to substantiate an independent claim for declaratory relief, and such claim is subject to dismissal.

### Accounting

The complaint's (tenth) accounting claim alleges that "some of all of the monies paid have been misapplied and requests for simple accounting transcripts have been refused."

Wells Fargo argues that it is not subject to an accounting in that it owes Mr. Valenzuela neither money nor fiduciary duties.

An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.  *Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal.App.3d 1, 14, 135 Cal.Rptr. 915 (1977).  A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.  *Civic Western*, 66 Cal.App.3d at 14, 135 Cal.Rptr. 915. An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain.  *Civic Western*, 66 Cal.App.3d at 14, 135 Cal.Rptr. 915;  *see St. James Church of Christ Holiness v. Superior Court In and For Los Angeles County,* 135 Cal.App.2d 352, 359, 287 P.2d 387 (1955) ("If an action is for an amount which is unliquidated and unascertained and which cannot be determined without an accounting, it is a suit in equity").  Moreover, an accounting claim "need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff." *Brea v. McGlashan*, 3 Cal.App.2d 454, 460, 39 P.2d 877 (1934).

"A right to an accounting is derivative; it must be based on other claims." *Janis v. California State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998).

Moreover, as an equitable matter, an accounting frequently "presents a fiduciary relation between the parties in the nature of a trust which brings it especially within equitable remedies." *Kritzer v. Lancaster*, 96 Cal.App.2d 1, 6, 214 P.2d 407 (1950).

Lastly, a plaintiff, "as the party owing money, not the party owed money, has no right to seek an accounting." *Quinteros v. Aurora Loan Services,* 740 F.Supp.2d 1163, 1170 (E.D. Cal. 2010).

The complaint lacks facts to support an accounting, especially given dismissal of the complaint's other claims from which to derive an accounting.  There are no facts to support complicated accounts, and presumably Mr. Valenzuela has the ability to ascertain what he allegedly paid on his loan.  Nothing demonstrates that Wells Fargo, the party owed money, is subject to an accounting, especially given the lack of its fiduciary obligations to Mr. Valenzuela as a loan servicer.[5]  The complaint fails to invoke equity for an accounting, and the accounting claim is subject to dismissal.

## Immunities For Trustee Northwest

Northwest contends that statutory immunities bar the complaint's claims against Northwest given its limited role as DOT trustee.

As a reminder, non-judicial foreclosure sales "are governed by a 'comprehensive' statutory scheme. This scheme, which is found in Civil Code sections 2924[, et seq.], evidences a legislative intent that a sale which is properly conducted 'constitutes a final adjudication of the rights of the borrower and lender.'" *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123 Cal.App.4th 24, 32, 20 Cal.Rptr.3d 37 (2004) (quoting *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.*, 85 Cal.App.4th 1279, 1283-1284, 102 Cal.Rptr.2d 711, fn. omitted (2001)).

Subsection (d) of California Civil Code section 2924 ("section 2924") renders as California Civil Code section 47 "privileged communications" the "mailing, publication, and delivery" of foreclosure notices and "performance" of foreclosure procedures.  The section

---

[5]      There is no actionable duty between a lender and borrower in that loan transactions are arms-length.  A lender "owes no duty of care to the [borrowers] in approving their loan.  Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases).  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991); *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal. Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

2924(d) privilege extended through California Civil Code section 47 applies to tort claims other than malicious prosecution.  *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim we have identified as falling outside the privilege established by section 47(b) is malicious prosecution.")

Section 2924(b) provides Northwest, as trustee, further protections:  "In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."

A deed of trust trustee's limited liability is congruent with its limited duties.  An "ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to the execution of the trust."  *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973).  A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt."  *Lupertino*, 35 Cal.App.3d at 748, 111 Cal.Rptr. 112 (quoting *Bank of Italy, etc. Assn. v. Bentley*, 217 Cal. 644, 656, 20 P.2d 940 (1933)).   The California Court of Appeal has explained a deed of trust trustee's limited authority:

> The trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust." (*Vournas v. Fidelity National Title Ins. Co.* (1999) 73 Cal.App.4th 668, 677, 86 Cal.Rptr.2d 490.) Consistent with this view, California courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust. As our Supreme Court noted in *I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596, "The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.... [¶] ... [T]here is no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes." ( *Id.* at pp. 287-288, 216 Cal.Rptr. 438, 702 P.2d 596.)

*Heritage Oaks Partners v. First American Title Ins. Co.*, 155 Cal.App.4th 339, 345, 66 Cal.Rptr.3d 510 (2007); *see Monterey SP Partnership v. WL Bangham*, 49 Cal.3d 454, 462-463, 261 Cal.Rtpr. 587 (1989) ("The similarities between a trustee of an express trust and a trustee under a deed of trust end with the name. . . .  the trustee under a deed of trust does not

have a true trustee's interest in, and control over, the trust property. Nor is it bound by the fiduciary duties that characterize a true trustee.")

A "trustee has a general duty to conduct the sale 'fairly, openly, reasonably, and with due diligence,' exercising sound discretion to protect the rights of the mortgagor and others." *Hatch v. Collins*, 225 Cal.App.3d 1104, 1112, 275 Cal.Rptr. 476 (1990)(citation omitted).

Northwest's alleged wrongs are subject to section 2924(b) and (d) immunity. In the absence of allegations of Northwest's malice, section immunity 2924(d) bars purported claims based on cited California statutes or related wrongs. No facts support that Northwest acted in bad faith to erode section 2924(b) protection. There is nothing to suggest that Northwest exceeded its DOT trustee authority to initiate property foreclosure. As such, Northwest is immunized from the complaint's claims, which further fail for the reasons addressed above.

## Attempt At Amendment And Malice

Since the complaint lacks viable claims, Mr. Valenzuela is unable to cure claims by allegation of other facts and thus is not granted an attempt to amend. No further facts are apparent to attempt to support his claims. Mr. Valenzuela's complaint raises frivolous points, all of which this Court need not address individually. *See Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.")

Moreover, this Court surmises that Mr. Valenzuela brought this action in absence of good faith and seeks to exploit the court system solely for delay or to vex Wells Fargo, Northwest and the foreclosure process. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). The complaint comprises invalid claims. An attempt to vex or delay provides further grounds to dismiss this action.

## CONCLUSION, ORDER AND JUDGMENT

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice this action and all claims against Wells Fargo and Northwest;

2.      ENTERS this JUDGMENT in favor of defendants Wells Fargo Bank, N.A. and Northwest Trustee Services, Inc. and against plaintiff Mario Valenzuela in that there is no just reason to delay to enter such judgment given Mr. Valenzuela's claims against these defendants and that their alleged liability is clear and distinct from claims against and liability of any other defendant. *See* F.R.Civ.P. 54(b).   This JUDGMENT is subject to F.R.App.4(a)'s time limitations to file an appeal of this JUDGMENT; and

3.      ORDERS Mr. Valenzuela, no later than February 3, 2014, to file papers either to: (a) dismiss this action against defendant WMHLI Transfer Interim LP; or (b) show good cause why this Court should not dismiss this action against any remaining defendant, including WMHLI Transfer Interim LP.

**This Court ADMONISHES Mr. Valenzuela that this Court will dismiss this action against any remaining defendant, including WMHLI Transfer Interim LP, if Mr. Valenzuela fails to comply with this order and fails to file timely papers as required by this order.   This Court ADMONISHES Mr. Valenzuela's counsel of potential liability under 28 U.S.C. § 1927 and other authorities.   This admonishment is given neither lightly, nor should it be taken lightly.**

IT IS SO ORDERED.

Dated:   __**January 28, 2014**__          ____**/s/ Lawrence J. O'Neill**____
                                          UNITED STATES DISTRICT JUDGE

34